*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONELL WILLIE-TERRELL IVEY,

        Defendant-Appellant.

UNPUBLISHED
November 18, 2024
2:49 PM

No. 366838
Macomb Circuit Court
LC No. 2022-001910-FC

Before: FEENEY, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction for assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 84 to 240 months' imprisonment for his conviction. We affirm.

## I. BACKGROUND

Defendant's conviction stems from his brutal beating of the victim on June 14, 2022. According to the victim, on that day, he was drinking in a park when defendant, whom the victim did not know, came up to the victim and told the victim to give him a drink. The victim refused, and the next thing he remembered was waking up in the hospital.

Anthony James Jones testified that he was driving by the park on June 14, 2022, when he witnessed part of the altercation between defendant and the victim. Jones testified that he saw defendant standing over the victim, punching him. Jones saw the victim with his hands up, motioning for defendant to stop, but defendant continued punching the victim in the head. As Jones continued watching, he saw defendant start to stomp the victim in the head and face. Jones described the stomps as "hard and brutal"; he said that defendant stomped the victim's head and face so hard that Jones could hear the stomps from where he was watching about 20 to 30 yards away. Jones estimated that defendant stomped the victim seven to nine times. Jones instructed his passenger to call 911, and he watched as officers arrived and arrested defendant, and as paramedics arrived and treated the victim.

-1-

An evidence technician took photos of the victim's injuries while he was being treated by paramedics in the ambulance following the assault, and those photographs were admitted as evidence at defendant's trial. The technician described one of the photos as showing "brain matter" coming out of the victim's ear.

The victim described having serious injuries to his face following the assault, and he explained that he "couldn't walk correctly" afterwards. The victim testified that he was in the hospital for three or four days following the attack. After he was released, the victim went home, then went to fulfill his prescriptions. While doing so, the victim passed out and had to be transported back to the hospital, where he stayed for another three or four days. After he was released a second time, the victim fainted again, this time while walking to the bus stop, and he woke up in the hospital a third time. The victim was told that he had a brain injury. The victim testified that he had never been hospitalized before the June 14, 2022 assault. The victim also testified that he was still having problems walking at the time of trial, and he generally used a cane or walker for assistance. He said that he had fallen "[w]ay over a hundred" times since the assault, whereas he never had such problems before. The victim added that he now had to live with his mother so she could take care of him, and that he was no longer permitted to pick up his grandchildren because everyone was afraid that he would fall while holding them.

Defendant was charged with assault with intent to commit murder under MCL 750.83. While defendant's case was in district court, he was determined to be indigent and was appointed counsel. After defendant was bound over but before his trial, the prosecution proposed a deal in which, if defendant pleaded guilty to the lesser offense of AWIGBH, the prosecution would dismiss defendant's status as a fourth-offense habitual offender, and his guidelines sentence would be 38 to 76 months' imprisonment. Defendant declined this offer.[1] On the first day of defendant's trial, before trial commenced, the parties and the trial court placed on the record a *Cobbs*[2] agreement. The court stated that if defendant "were to plead to the great bodily harm today [the court] would sentence him to a minimum of 48 months." Defendant rejected this offer, and the case proceeded to trial. After the jury heard the evidence detailed above, it convicted defendant of AWIGBH.

At defendant's sentencing hearing, the parties agreed that the guidelines were properly scored. The sentencing guidelines' range for defendant was 29 to 114 months' imprisonment, and a sentence of 60 to 240 months' imprisonment was recommended. During the hearing, the victim spoke about the long-term health consequences he was continuing to suffer as a result of defendant's assault, and in response to questioning by the trial court, the victim clarified that he had never met defendant before. The trial court sentenced defendant to 84 to 240 months' imprisonment with 258 days of jail credit, and assessed "$5,730.00 [for] court appoint [sic] counsel fee." The trial court did not elaborate on the basis for defendant's sentence. This appeal followed.

---

[1] This offer was made by the original prosecutor assigned to this case, and a new prosecutor took over the case before it proceeded to trial. The new prosecutor, however, made clear on the first day of defendant's trial that he would "stand by" the original offer, but defendant still refused it.

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

## II. SENTENCING

Defendant argues that he is entitled to resentencing because (1) the trial court did not provide an on-the-record justification for its within-guidelines sentence and (2) the trial court implicitly punished defendant for exercising his right to a trial by imposing an 84-month sentence just one month after offering defendant a 48-month sentence for the same conviction as part of a *Cobbs* agreement. Neither argument has merit.

## A. STANDARD OF REVIEW

Within-guidelines sentences are reviewed for reasonableness. *People v Posey*, 512 Mich 317, 326; 1 NW3d 101 (2023) (*Posey I*). A review for reasonableness asks whether the trial court abused its discretion by violating the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 477; 902 NW2d 327 (2017). The abuse-of-discretion standard recognizes that there is no single correct outcome but a range of reasonable and principled outcomes, and the trial court's decision must fall within that range. *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). The principle of proportionality requires that a sentence imposed be proportionate to the seriousness of the offense and the background of the offender. See *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990). In effect, then, reviewing a sentence for reasonableness asks whether the sentence imposed falls within the range of reasonable and principled sentences that accurately reflects the seriousness of the offense and the background of the offender.

## B. WITHIN-GUIDELINES SENTENCES GENERALLY

Following *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015), the legislative sentencing guidelines, which were previously mandatory for sentencing courts, are now advisory only. Still, until recently, if a trial court correctly scored the sentencing guidelines and relied upon accurate information in determining the defendant's sentence, this Court was required to affirm the within-guidelines sentence. MCL 769.34(10). In *Posey I*, 512 Mich at 349, however, our Supreme Court struck this requirement as unconstitutional. In so doing, *Posey I* held that a within-guidelines sentence is still presumed to be proportionate, and the defendant bears the burden of overcoming this presumption. *Id.* at 357, 360. The guidelines remain relevant to this analysis insofar as a within-guidelines sentence is presumed proportionate, but " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 661.

## C. FAILURE TO PROVIDE ON-THE-RECORD JUSTIFICATION FOR SENTENCE

Defendant first tries to overcome the presumption that his within-guidelines sentence was proportionate by arguing that the trial court failed to provide an on-the-record justification for the sentence it imposed. We must reject this argument because there is no requirement that a trial court provide an on-the-record justification before imposing a within-guidelines sentence. See *People v Posey (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2023); slip op at 4 (*Posey II*) (explaining that "there is nothing in *Posey* [*I*] suggesting that a sentencing court needs to expressly explain why a within-guidelines sentence is reasonable and proportionate").

An on-the-record explanation is required when necessary to facilitate appellate review, see, e.g., *Steanhouse*, 500 Mich at 476 (explaining that a trial court must justify an out-of-guidelines sentence to facilitate appellate review), and a within-guidelines sentence is reviewable without an on-the-record explanation.[3] This is because the reviewing court can simply look to the trial court's scoring of the guidelines to assess whether the trial court abused its discretion by imposing a sentence that was not proportionate to the seriousness of the offense and the background of the offender. See *People v Dixon-Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017) (explaining that the guidelines embody the principle of proportionality by considering the background of the offender and the circumstances of the offense).

Take the trial court's scoring of the guidelines here, for example. For OVs, the trial court assessed 25 points for OV 3, reflecting that the victim suffered life-threatening injury. MCL 777.33(1)(c). For OV 4, the trial court assessed 10 points, reflecting that the victim suffered serious psychological injury requiring professional treatment. MCL 777.34(1)(a). This resulted in a total OV score of 35 points. For PRVs, the trial court assessed 30 points for PRV 2, reflecting that defendant had "4 or more prior low severity felony convictions." MCL 777.52(1)(a). The court assessed 2 points for PRV 4 because defendant had one prior low-severity juvenile adjudication, MCL 777.54(1)(e); 20 points for PRV 5 because defendant had seven or more prior misdemeanor convictions, MCL 777.55(1)(a); 10 points for PRV 6 because defendant was "on parole, probation, or delay sentence status or on bond awaiting adjudication or sentencing for a felony," MCL 777.56(1)(c); and 10 points for PRV 7 because defendant had one subsequent or concurrent conviction, MCL 777.57(1)(b). This resulted in a total PRV score of 72 points. Defendant was convicted of AWIGBH under MCL 750.84, which is a Class D offense. MCL 777.16d. Given defendant's OV and PRV score, the sentencing grid for Class D offenses recommended a minimum sentence between 29 and 57 months. But because defendant was a fourth-offense habitual offender, MCL 769.12, the upper limit of defendant's recommended minimum sentence was increased by 100%, MCL 777.21(3)(c), so defendant's recommended minimum-sentencing range was 29 months to 114 months.

The trial court imposed an 84-month minimum sentence, which was well within this minimum-sentencing range. As detailed above, this sentence accounted for the severe physical and psychological injuries to the victim; defendant's history of criminal activity, including more than four prior low-severity felony convictions (defendant had eight prior felony convictions) and more than seven prior misdemeanor convictions (defendant had 29 prior misdemeanor convictions); as well as defendant's status as a fourth-offense habitual offender. This sufficiently demonstrates that the trial court's within-guidelines sentence considered the seriousness of defendant's offense and defendant's background. No additional explanation by the trial court was necessary to facilitate this Court's review of whether the trial court abused its discretion by imposing this sentence because, on the record as it stands, we are capable of determining whether the sentence imposed falls within the range of reasonable and principled sentences that accurately reflects the seriousness of the offense and the background of the offender. Accord *Posey I*, 512 Mich at 358 (recognizing that "a within-guidelines sentence reflects that both the sentencing court

---

[3] To be clear, on-the-record explanations are always useful when reviewing a within-guidelines sentence for reasonableness, but this does not mean that an on-the-record explanation is required.

-4-

and sentencing guidelines reached the same conclusion regarding the appropriate punishment for a defendant considering their circumstances and their offenses").

For these reasons, we reject defendant's argument that he can overcome the presumption that his within-guidelines sentence was proportionate by merely observing that the trial court did not provide an on-the-record justification for the within-guidelines sentence it imposed.[4, 5]

### D.  "TRIAL TAX"

Defendant alternatively argues that he can overcome the presumption of proportionality because the trial court imposed an 84-month sentence for defendant's jury-trial conviction of AWIGBH just one month after the court offered to sentence defendant to 48 months' imprisonment if he pleaded guilty to AWIGBH as part of a *Cobbs* agreement, which suggests that defendant "incurred a 'trial tax' for declining the trial court's *Cobbs* agreement."  We disagree.

It is impermissible for a sentencing court to consider a defendant's decision to exercise his or her right to trial when fashioning a sentence.  *People v Brown*, 294 Mich App 377, 389; 811 NW2d 531 (2011).  See also *People v Earegood*, 383 Mich 82, 85; 173 NW2d 205 (1970).  But a trial court is not forbidden from imposing "a higher sentence following a jury trial than [the defendant] would have received had he pleaded guilty."  *Brown*, 294 Mich App at 389.

Before defendant's trial in this case, the parties and the trial court placed on the record a *Cobbs* agreement in which the trial court stated that it would sentence defendant to a minimum of 48 months' imprisonment if defendant pleaded guilty to AWIGBH.  In *People v Cobbs*, 443 Mich

---

[4] Additionally, defendant bears the burden of overcoming the presumption that his within-guidelines sentence was proportionate, and the fact that the trial court did not justify defendant's within-guidelines sentence on the record does not tend to establish that the imposed sentence was disproportionate.  That failure does not tend to establish anything about the proportionality of defendant's sentence.  It follows that, at most, the remedy for this failure would be remand for the trial court to either justify its sentence on the record or resentence defendant.  But even in that scenario, resentencing would not be *required*, as defendant contends.

[5] We acknowledge that another panel, in an unpublished opinion, reached a different result.  See *People v Hershey*, unpublished per curiam opinion of the Court of Appeals, issued July 18, 2024 (Docket No. 365436), p 5.  The *Hershey* panel, however, did not acknowledge the binding statement in *Posey II* that "there is nothing in *Posey* [*I*] suggesting that a sentencing court needs to expressly explain why a within-guidelines sentence is reasonable and proportionate."  *Posey II*, ___ Mich App at ___; slip op at 4.  The *Hershey* panel also failed to look at how the trial court scored the guidelines to assess whether the sentence imposed fell within the range of reasonable and principled sentences that accurately reflects the seriousness of the offense and the background of the offender.  Instead, the panel summarily concluded, "Here, the trial court did not provide sufficient reasoning to allow us to conduct the review for reasonableness mandated by *Posey*.  Consequently . . . we must remand the case to the trial court to justify the sentence of 46 months to 20 years in prison or to conduct a resentencing hearing."  *Hershey*, unpub op at 5.  Given the lack of reasoned analysis supporting this conclusion, we respectfully decline to follow *Hershey*.

276, 283; 505 NW2d 208 (1993), our Supreme Court explained that it was permissible for a judge, at the request of a party, to "state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense." (Emphasis omitted.) The Court elaborated that this "preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources." *Id*. In other words, "[a] judge's candid statement of how a case appears at an early stage of the proceedings does not prevent the judge from deciding the case in a fair and evenhanded manner later, when additional facts become known." *Id*.

Defendant contends that his within-guidelines sentence is disproportionate because it appears to defendant that the trial court punished defendant for exercising his right to trial. Defendant bases this argument solely on the fact that that trial court did not explain why it sentenced defendant to a minimum of 84-months' imprisonment for his AWIGBH conviction after the trial court offered to sentence defendant to a minimum of 48-months' imprisonment if he pleaded guilty to AWIGBH as part of a *Cobbs* agreement. He argues that, without an explanation for the substantially different sentences, there is too great a risk that the trial court punished defendant for exercising his right to trial, which should overcome the presumption that his sentence is proportionate.

It is not apparent how a risk that the trial court punished defendant for exercising his right to trial relates to the *proportionality* of defendant's sentence, and defendant's argument is otherwise plainly insufficient to carry his burden of establishing that his within-guidelines sentence was disproportionate under the circumstances. Defendant's argument hinges on the fact that the trial court imposed a higher sentence than it would have imposed as part of the *Cobbs* agreement, but this fact alone establishes nothing. A *Cobbs* agreement is not intended to bind a trial court's sentencing discretion. The *Cobbs* Court was explicit about this: "The judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources." *Id*. So, at the very least, for a trial court's offer as part of a *Cobbs* agreement to support that a later-imposed, higher sentence was disproportionate, the defendant would need to show that no additional facts emerged later in the proceedings that may have changed the trial court's evaluation of the case.[6] Otherwise, the fact that a trial court did not follow a sentence offered as part of a *Cobbs* agreement after the defendant rejected it does not tend to establish anything about the proportionality of defendant's sentence.

As defendant does not argue that the trial court did not learn facts after placing the *Cobbs* agreement on the record that could have changed its evaluation of the case, we could end the analysis here, as it is defendant's burden to establish that his sentence was disproportionate. We nevertheless observe that, when the trial court placed the *Cobbs* agreement on the record, it had

---

[6] We offer no opinion on whether such circumstances would actually tend to establish that an imposed sentence was disproportionate. We merely note that this is the bare minimum a defendant would need to show to support an argument that an imposed sentence was disproportionate because it deviated from a proposed *Cobbs* agreement.

never heard from the victim. The victim did not testify at the preliminary examination; only an officer and Jones did. The victim's testimony at trial highlighted not only the brutality of defendant's attack as demonstrated by the long-term and ongoing health problems the victim was experiencing as a result of defendant's assault, but the fact that this vicious attack was essentially unprovoked. Additionally, only a single photo of the victim in the ambulance following the assault was admitted at the preliminary examination, and it is not clear whether the trial court had viewed this photo when it placed the *Cobbs* agreement on the record. But even if it did, additional photos were entered into evidence at defendant's trial, including a photo of the victim's ear following the attack in which "brain matter" could be seem coming out of the ear. These photos, like the victim's testimony, drove home the sheer brutality of defendant's attack and its effects on the victim. Given this additional evidence admitted at defendant's trial, we must reject defendant's argument that there was any risk in this case that defendant's 84-month minimum sentence was the result of his exercising his right to trial. Rather, it is obvious that the trial court, consistent with *Cobbs*, determined that a longer sentence was more proportionate after hearing additional evidence.

## III. ATTORNEY FEES UNDER MCL 769.1K(B)(IV)

Defendant next argues that the trial court was not permitted to assess attorney fees under MCL 769.1k(1)(b)(*iv*) because defendant is indigent, and assessing attorney fees to an indigent defendant is inconsistent with the Michigan Indigent Defense Commission Act (MIDCA), MCL 780.981 *et seq*. We disagree.[7]

Whether MCL 769.1k(1)(b)(*iv*) was properly applied to defendant raises an issue of statutory interpretation, so if preserved, our review would be de novo. *People v Allen*, 507 Mich 597, 604; 968 NW2d 532 (2021). This issue is not preserved, however, because defendant failed to raise it when the trial court assessed the fees. See *People v Jackson*, 483 Mich 271, 293 n 18; 769 NW2d 630 (2009) (noting that a challenge to whether MCL 769.1k applied must be raised "when the trial court imposes the fee," otherwise "the claim of error will be seen as unpreserved"). Unpreserved errors are reviewed for plain error affecting substantial rights. *Allen*, 507 Mich at 604. To be entitled to relief under the plain-error standard, the defendant must establish that (1) an error occurred, (2) the error was clear or obvious, and (3) the obvious error affected the defendant's substantial rights. *People v Carines*, 460 Mich 750, 762-763; 597 NW2d 130 (1999).

---

[7] The prosecution in its brief on appeal agreed with defendant "that any attorney fees should be vacated." This was improper. MCR 7.211(C)(7) provides, "In a criminal case, if the prosecutor concurs in the relief requested by the defendant, the prosecutor must file a confession of error and state reasons why concurrence in the relief requested is appropriate." Additionally, this Court is not bound by the parties' agreement as to the proper interpretation of a statute, because that presents an issue of law. See *In re Estate of Finlay*, 430 Mich 590, 595; 424 NW2d 272 (1988) ("It is well established that a court is not bound by the parties' stipulations of law."); *Kimmelman v Heather Downs Mgt Ltd*, 278 Mich App 569, 576; 753 NW2d 265 (2008) (applying this rule after the "defendants conceded" that the plaintiff's interpretation of the Whistleblowers' Protection Act was correct). It is this Court's responsibility to evaluate whether the parties' agreed-upon interpretation of the statutes at issue is correct.

The goal of statutory interpretation is to discern and give effect to the Legislature's intent. *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008). The strongest indicator of legislative intent is the words the Legislature used in the statute. *Id*. When the language of a statute is clear and unambiguous, courts must assume that the Legislature intended its plain meaning and enforce the statute as written. *Id*.

A trial court can only impose costs when authorized by statute. *People v Lloyd*, 284 Mich App 703, 707; 774 NW2d 347 (2009). There can be no serious dispute that MCL 769.1k(1)(b)(*iv*) authorized the trial court to impose the cost of attorney fees in this case; it states, "The court may impose . . . [t]he expenses of providing legal assistance to the defendant."

Defendant contends that, because the MIDCA funds "indigent defense systems" and does not require fully indigent defendants to contribute to the cost of their defense, the trial court was not permitted to impose attorney fees on defendant, who was fully indigent. In other words, defendant argues that the MIDCA repealed MCL 769.1k(1)(b)(*iv*) by implication to the extent that the latter statute applies to indigent defendants. We disagree.

MCL 769.1k(1)(b)(*iv*) does not conflict with any portion of the MIDCA, so both statutes can have effect, and we cannot conclude that the MIDCA repealed MCL 769.1k(1)(b)(*iv*) by implication as applied to indigent defendants. See *People v Gustin*, 57 Mich 407, 408; 24 NW 156 (1885) (explaining that "if the two statutes can stand and both have effect, they must be allowed to do so"). Defendant's argument relies principally on the fact that, under the MIDCA, trial courts are required to collect payment from partially-indigent defendants as "contribution or reimbursement" for the cost of the partially-indigent defendant's defense. MCL 780.991(3)(a) states in relevant part that an "indigent criminal defense system"[8] must determine whether a defendant is indigent as part of "determining whether a defendant is entitled to the appointment of counsel[.]" The subsection continues, "If an indigent criminal defense system determines that a defendant is partially indigent, the indigent criminal defense system shall determine the amount of money the defendant must contribute to his or her defense." MCL 780.991(3)(a). MCL 780.993(17), in turn, states, "The court shall collect contribution or reimbursement from individuals determined to be partially indigent under applicable court rules and statutes." Thus, under the MIDCA, a trial court is required to collect reimbursement or contribution from a partially-indigent defendant to pay for the defendant's defense. See *Lockridge*, 498 Mich at 387 ("As we have stated many times, 'shall' indicates a mandatory directive."). The MIDCA imposes no such requirement when a defendant is fully indigent.

MCL 769.1k(1)(b)(*iv*), in contrast, is permissive because it uses the word "may." See *People v Arnold*, 502 Mich 438, 466; 918 NW2d 164 (2018) ("It is well established that the use of the word 'may' is ordinarily permissive."). The statute also makes no distinction between fully-

---

[8] The MIDCA defines "indigent criminal defense system" as either "[t]he local unit of government that funds a trial court" or "[i]f a trial court is funded by more than 1 local unit of government, those local units of government, collectively." MCL 780.983(h).

indigent, partially-indigent, and non-indigent defendants; it permits trial courts to impose "[t]he expenses of providing legal assistance to the defendant" on any defendant. MCL 769.1k(1)(b)(*iv*).

These differences are dispositive. *Requiring* trial courts to "collect contribution or reimbursement" from partially-indigent defendants to pay for their defense does not conflict with *permitting* trial courts to impose "[t]he expenses of providing legal assistance to the defendant" on any defendant, including fully-indigent ones. The first reflects the Legislature's intent to require defendants who are theoretically capable of contributing to their defense to do so, while the second reflects the Legislature's intent to authorize trial courts to impose on any defendant the expenses of providing legal assistance to that defendant.[9] Because the statutes do not conflict, there is no basis to conclude that the Legislature intended to repeal MCL 769.1k(1)(b)(*iv*) by implication as applied to indigent defendants when it passed the MIDCA. We therefore hold that MCL 769.1k(1)(b)(*iv*) still applies to indigent defendants like defendant here, and that statute authorized the trial court to impose "[t]he expenses of providing legal assistance to the defendant."[10]

## IV. CONSTITUTIONALITY OF MCL 769.1k(1)(b)(*iv*)

Defendant alternatively argues that MCL 769.1k(1)(b)(*iv*) is unconstitutional under Article 8, § 9, of Michigan's 1963 Constitution. We disagree.

Defendant failed to preserve this issue by raising it in the trial court, so our review is for plain error affecting substantial rights. *Allen*, 507 Mich at 604. To be entitled to relief under the plain-error standard, the defendant must establish that (1) an error occurred, (2) the error was clear or obvious, and (3) the obvious error affected the defendant's substantial rights. *Carines*, 460 Mich at 762-763.

Statutes are presumed constitutional and will only be declared unconstitutional if the "unconstitutionality is clearly apparent." *People v Solloway*, 316 Mich App 174, 184; 891 NW2d 255 (2016) (quotation marks and citation omitted). A statute's constitutionality can be challenged

---

[9] Defendant also argues that, as a practical matter, a trial court should not be allowed to impose the expenses of providing legal assistance on a fully-indigent defendant under MCL 769.1k(1)(b)(*iv*) because the trial court is "already reimbursed for those fees under the MIDCA." We question whether, as a matter of statutory interpretation, this would make a difference, but that is ultimately irrelevant because the assertion itself appears to be inaccurate. Defendant cites this assertion to an unpublished case (which plainly discussed the issue in obiter dicta), and that case cited the assertion to MCL 780.993. Neither the unpublished case nor defendant identifies which portion of MCL 780.993 states that trial courts are to be "reimbursed" the cost of providing legal assistance to indigent defendants, and having reviewed MCL 780.993, we conclude that it says nothing about "reimbursing" trial courts for anything.

[10] The trial court was not permitted to impose attorney fees under MCL 769.1k(1)(b)(*iv*) "without first making findings of fact in support" of the amount imposed. *People v Lewis*, 503 Mich 162, 163-164; 926 NW2d 796 (2018). Defendant fails to argue that the trial court did not make findings of fact in support of the $5,730 imposed insofar as that amount reflected attorney fees, so we deem this argument abandoned. *People v McMiller*, 202 Mich App 82, 83 n 1; 507 NW2d 812 (1993).

"in one of two ways: by either a facial challenge or an as-applied challenge." *People v Johnson*, 336 Mich App 688, 692; 971 NW2d 692 (2021) (quotation marks and citation omitted). "A facial challenge attacks the statute itself and requires the challenger to establish that no set of circumstances exists under which the [statute] would be valid." *Id*. (quotation marks and citation omitted). An as-applied challenge, on the other hand, "alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution of government action." *Id*. (quotation marks and citation omitted). Defendant does not identify whether he is making a facial or as-applied challenge, but the substance of his argument makes plain that he is arguing that MCL 769.1k(1)(b)(*iv*) is facially unconstitutional.

Article 8, § 9, of Michigan's 1963 Constitution states:

> The legislature shall provide by law for the establishment and support of public libraries which shall be available to all residents of the state under regulations adopted by the governing bodies thereof. *All fines assessed and collected* in the several counties, townships and cities *for any breach of the penal laws shall be exclusively applied to the support of such public libraries, and county law libraries* as provided by law. [Emphasis added.]

The only case cited by defendant—and the only case we could find based on our own research—applying this constitutional provision in the criminal setting is *People v Barber*, 14 Mich App 395; 165 NW2d 608 (1968).[11] At issue in *Barber* was a statute that added a 10% surcharge to "every fine, penalty and forfeiture imposed and collected by the courts for criminal offenses." *Id*. at 397. The statute labeled this surcharge a "cost," and stated that this "cost" was to eventually be "deposited in the law enforcement training fund." *Id*. at 397-398. The *Barber* Court rejected the Legislature's labeling of the surcharge as a "cost" because, based on the Court's "study of cases from the Michigan Supreme Court and from other jurisdictions," it concluded that "by definition 'costs,' to be taxable as incident to the prosecution of criminal charges, must bear some direct relation to actual costs incurred in such prosecutions." *Id*. at 399. This made up the bulk of the *Barber* Court's reasoning; it repeatedly explained that the assessment under the statute was more akin to the imposition of a "fine" than an assessment of "costs" because costs "must bear some direct relation to actual costs incurred in a given criminal prosecution." *Id*. See also *id*. at 402 ("The rationale behind these interpretations leads us to the conclusion that costs, to be taxable, must bear some direct relation to actual costs incurred in a given criminal prosecution."); *id*. at 403 (explaining that the assessment under the statute "bears no reasonably direct relation to actual costs incurred in the prosecution of a criminal defendant and therefore cannot be considered by the reasoning of any authority to represent 'costs' incurred"); *id*. at 404 (explaining that cases from other jurisdictions addressing this issue "shared the common conclusion that taxable costs must bear some direct relation to actual costs incurred in prosecution"); *id*. at 405 (discussing another case that "again founded its decision on the conclusion that the prescribed assessment could not be considered incident to the actual prosecution of criminal charges"); *id*. at 406 (explaining that

---

[11] Cases decided by the Court of Appeals before November 1, 1990, are not strictly binding, see MCR 7.215(J)(1), though published cases decided before that date still have "precedential effect under the rule of stare decisis," MCR 7.215(C)(2).

the "reasoning of reduction ad absurdum has applicability here, and it reinforces our conclusion that, in order to be taxable as incident to criminal prosecution, 'costs' must bear some direct relation to actual costs incurred in prosecution").

In the statute at issue here, like the one in *Barber*, the Legislature made plain that it did not intend to impose a "fine." "The Legislature is aware that a fine is generally a criminal punishment." *People v Earl*, 495 Mich 33, 40; 845 NW2d 721 (2014). So, when the Legislature uses language to suggest that an assessment is not a "fine," it "implies a nonpunitive intent." *Id*. MCL 769.1k(1)(b)(*iv*) states that, if a defendant enters a guilty plea or if a defendant is found guilty after a trial, a trial court may impose "[t]he expenses of providing legal assistance to the defendant." In notable contrast, 769.1k(1)(b)(*i*) states a trial court may impose "[a]ny *fine* authorized by the statute" the defendant violated. (Emphasis added.) That MCL 769.1k(1)(b)(*iv*) does not use the word "fine" while Subsection (1)(b)(*i*) does implies that the Legislature did not intend for an assessment under MCL 769.1k(1)(b)(*iv*) to be a fine or have punitive intent. See *People v Lewis*, 503 Mich 162, 167; 926 NW2d 796 (2018) (explaining that when the Legislature uses certain language in one portion of a statute and omits that language in another portion of the same statute, the omission is deemed intentional); *Earl*, 495 Mich at 40. See also *People v Konopka*, 309 Mich App 345, 372-373; 869 NW2d 651 (2015) (relying in part on this same reasoning to conclude that the Legislature did not intend for the imposition of court costs under MCL 769.1k(1)(b)(*iii*) to be a criminal punishment).

Coupling this with *Barber* leads us to conclude that MCL 769.1k(1)(b)(*iv*) does not violate Const 1963, art 8, § 9. Because this case presents a facial challenge, we must determine whether there is a set of circumstances in which the imposition of expenses under MCL 769.1k(1)(b)(*iv*) would be constitutionally valid. See *Johnson*, 336 Mich App at 692. Based on the plain language of the statute, the Legislature did not intend for the imposition of "[t]he expenses of providing legal assistance to the defendant" under MCL 769.1k(1)(b)(*iv*) to be a fine. If this imposition of expenses bears a direct relation to the actual costs incurred providing legal assistance to the defendant, see *Barber*, 14 Mich App at 399, then, consistent with the Legislature's intent, it would be a compensatory and nonpunitive assessment rather than a punitive fine. See *Earl*, 495 Mich at 40 (explaining that a "fine" is generally punitive). See also *Saginaw Pub Libraries v Judges of 70th Dist Court*, 118 Mich App 379, 389; 325 NW2d 777 (1982) (holding that a "$5 judgment fee" was not subject to Const 1963, art 8, § 9 because "the fee appears to be compensatory and not penal").[12] Because a compensatory and nonpunitive assessment does not constitute a "fine" for

---

[12] While we have not conducted an exhaustive search, this conclusion is consistent with the conclusions from other jurisdictions that have addressed whether requiring a criminal defendant to pay "attorney fees" constitutes "punishment." They all held that it did not. See *Hill v State*, 440 SW3d 670, 674 (Tex App, 2012); *State v Bale*, 39 Kan App 2d 655, 665 (2008); *State ex rel Goddard v Gravano*, 210 Ariz 101, 111; 108 P3d 251 (Ariz App, 2005).

purposes of Const 1963, art 8, § 9, see *Saginaw Pub Libraries*, 118 Mich App at 389, defendant has not established that MCL 769.1k(1)(b)(*iv*) is facially unconstitutional.[13]

Affirmed.

/s/ Kathleen A. Feeney
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace

---

[13] Defendant generally argues that this Court should determine whether MCL 769.1k(1)(*iv*) imposes a "fine" by looking at caselaw from other jurisdictions and the United States Supreme Court addressing the Excessive Fines Clause of the Eighth Amendment of the federal Constitution. We respectfully decline to employ such reasoning in this case because we find Michigan caselaw interpreting Michigan's Constitution, particularly Const 1963, art 8, § 9, to be more persuasive on this issue.